# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

CLETUS JOHN ROBERT FRANKLIN    )
                                 )
       Plaintiff,               )
                                 )
VS.                                )        No. 17-1020-JDT-cgc
                                 )
CYNTHIA CASAGRANADE, ET AL.,    )
                                 )
       Defendants.           )

---

## ORDER GRANTING MOTION FOR SCREENING (ECF No. 26), PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT PROCESS BE ISSUED AND SERVED ON THE REMAINING DEFENDANTS

---

On January 25, 2017, Plaintiff Cletus John Robert Franklin, an inmate in the custody of the Tennessee Department of Correction (TDOC) who is currently incarcerated at the Morgan County Correctional Complex (MCCX) in Wartburg, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) After attempts by Plaintiff to obtain his inmate trust account statement from prison officials were unsuccessful, the Court granted leave to proceed *in forma pauperis* on March 15, 2017, and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 18.) On July 20, 2017, Franklin filed an amended and supplemental complaint that supersedes the original complaint. (ECF No. 24.) Franklin complains of events that occurred during his previous incarceration at the Whiteville Correctional Facility (WCF)

in Whiteville, Tennessee. The WCF is managed by CoreCivic, a private prison management company. The Clerk shall record the Defendants[1] as Cynthia Casagrande, the TDOC Commissioner's Designee at the WCF; Unit Manager First Name Unknown (FNU) Bills; Unit Sergeant (Sgt.) FNU Boyd; WCF Chaplain Billy Leek, and CoreCivic.[2] The Defendants are sued in both their official and individual capacities.

Franklin alleges in the amended complaint that on July 19, 2016, the "John Doe" defendant, an inmate who was a member of the Crip gang, came into Franklin's cell and threatened him with a shank, then took his television while another Crip gang member stood watch at the celldoor. (ECF No. 24 at 1-2.) Franklin also saw another Crip inmate, FNU Norman, known as "Fat Grape," standing watch several cells away. Very early the next morning, Franklin alleges, someone slid a letter from Norman into his cell. Norman's letter told Franklin to retrieve two pounds of tobacco hidden in a box of chicken in a food service freezer and "mule it back for him to FA pod," after which Franklin would get his television back. The letter warned that if Franklin refused, he would be killed on sight (KOS). (*Id.* at 2.)

---

[1] Plaintiff also sues a "John Doe" inmate defendant. Service of process cannot be made on an unidentified party. In addition, the filing of a complaint against such a "John Doe" defendant does not toll the running of the statute of limitation against that party. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968).

[2] Because service of process is being ordered with regard to Franklin's official capacity claims against Defendants Boyd and Bills, adding their employer, CoreCivic, as a Defendant will clarify the docket.

A few hours later, Franklin went to Defendant Leek, told him what had happened, and requested protective custody (PC). Leek radioed Defendant Boyd, the Unit Sgt., and when she arrived Franklin explained to Boyd what had happened and asked for PC. Defendant Boyd went "to check his story" then came back and locked Franklin in the property room for some time before returning with Defendant Bills, the Unit Manager. (*Id.*) Franklin alleges that he requested PC from Bills after once more explaining what had happened. However, Bills allegedly screamed at Franklin that she had checked the camera and there were no black inmates near Franklin's cell the night before. Franklin contends that Bills was lying and that "her demeanor was malicious and very unprofessional." (*Id.*)

Because Defendant Bills allegedly lied about the cameras, Franklin states he asked to see an Internal Affairs Investigator. That request allegedly "enraged" Bills, who stated she did not care if Franklin "called upon God," he could either "man up" and return to his regular cell or refuse his cell assignment (RCA) and go to IB pod, the RCA pod. (*Id.*) Bills and Boyd then left. When Internal Affairs Investigator Jerry Davis arrived, he allegedly told Franklin that Defendant Bills, as the Unit Manager, had the authority to refuse Franklin PC simply because she wanted to, but the practice was illegal. Franklin further alleges Davis told him the Unit Managers at the WCF "do not 'believe' in PC" and that "it was a custom, albeit an illegal one, at [WCF] to send anyone who wanted PC to the RCA pod to 'teach them a lesson.'" (*Id.*) When Defendant Boyd returned and asked what he had decided to do, Franklin alleges he told her that he had no choice but to refuse his cell assignment and go to IB pod. Boyd left again and returned with Franklin's uninventoried property. (*Id.*)

On July 23, 2016, Franklin allegedly filed a grievance concerning what had happened and also filed a second, supplemental grievance on January 7, 2017; however, both grievances were returned to him as inappropriate because the issues were non-grievable. He appealed but states he never received a response. (*Id.* at 1.) Franklin asserts he sent a formal request for an internal investigation to Defendant Casagrande on August 10, 2016. That request sought PC and asked for an investigation of why WCF officials were blatantly ignoring TDOC policies; Franklin did not receive any response. (*Id.* at 2.)

Franklin asserts there is a long history of general population inmates breaching the security of IB pod in order to assault IB pod residents, (*id.* at 3), and alleges that when he got to IB pod, he discovered his life was still in danger, (*id.* at 2). He states he was forced to go to the mailroom to pick up his legal mail, knowing that if he was seen by a Crip inmate he would be killed; although he attempted to sneak by the Crips he recognized, Franklin finally refused to pick up his legal mail in person. He further asserts that he was taken off his mental health medication because no one would escort him to see the mental health provider. (*Id.*)

Franklin alleges that on January 5, 2017, he was assaulted by inmates paid by inmate Norman. As a result, Franklin allegedly suffered both serious physical injuries and emotional injuries, including depression. After the assault, he sent another request for PC to Defendant Casagrande, which again went unanswered. (*Id.* at 3.)

The amended complaint further alleges that on February 27, 2017, WCF Case Manager Cleaves "emergency reclassed" Franklin to the MCCX with a non-PC custody score, despite the WCF administration knowing he had a KOS on his head and would be

placed in the "Gang Triangle" full of Crips on his arrival. Franklin alleges this transfer was retaliatory and intended to force him into an even worse situation. (*Id.*)

Franklin also asserts various causes of action against the Defendants under Tennessee law, including negligence, gross negligence and intentional deprivation of property. (*Id.* at 3-5.) He seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.* at 5.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."

*Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally.  Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief.  Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915).  Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.  *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."  *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se*

complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Franklin filed his complaint pursuant to 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Franklin has not stated any claim against Defendant Leek, the WCF Chaplain. Franklin alleges only that Leek was the person to whom he made the initial request for PC and that Leek then immediately radioed Defendant Boyd. Franklin does not allege that chaplains at the WCF have any authority to grant an inmate's request for PC or the ability to influence a Unit Manager's decision whether to grant PC.

Franklin has no claim against Defendant Casagrande in her official capacity, as any such claim is construed as a claim against her employer, the State of Tennessee. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). However, Plaintiff has no valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't*

*of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code. Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

Franklin also has no § 1983 claim against Defendant Casagrande in her individual capacity because she is sued only because of her supervisory position.[3] Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

---

[3] Franklin does not assert any state law tort claims against Defendant Casagrande. (*See* ECF No. 24 at 3.)

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official, who is aware of the unconstitutional conduct of his subordinates but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). The amended complaint in this case does not allege that Defendant Casagrande, through her own actions, violated Franklin's rights.

Franklin also does not state a § 1983 claim under the First Amendment for retaliatory transfer. Although "[r]etaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution," *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005), Franklin alleges his emergency non-PC reclassification to the MCCX was done by Case Manager Cleaves, who is not named as a defendant. Franklin does not allege that

any named Defendant caused, influenced, or was even aware that the reclassification was occurring.

Franklin alleges that his request for PC was denied, which resulted in him being assaulted by other inmates. Such a claim for failure to protect arises under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). "The Supreme Court has held that 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Bishop v. Hackel,* 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer,* 511 U.S. at 834).

The subjective component of an Eighth Amendment violation also requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate

indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38. The subjective component must be evaluated for each defendant individually. *Bishop*, 636 F.3d at 767; *see also id.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

Franklin alleges his requests for PC were denied by Defendants Boyd and Bills on or about July 20, 2016, after two Crip gang members threatened and robbed him in his cell and he received the threatening letter from inmate Norman. He further alleges he felt constantly at risk in IB pod and that he ultimately was assaulted by gang members paid by inmate Norman. The Court finds that Franklin has stated an Eighth Amendment claim against Defendants Boyd and Bills for failure to protect him from a substantial risk of serious harm.

Franklin's allegations against Defendants Boyd and Bills in their official capacities are brought against their employer, CoreCivic. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street*, 102 F.3d at 814). The Sixth Circuit has applied the standards for assessing municipal liability to

claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). To prevail on a § 1983 claim against CoreCivic, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).

In this case, Franklin has alleged that WCF had a custom of denying PC to inmates who were threatened with physical harm, instead forcing them to either remain in danger or accept a disciplinary charge for refusing a cell assignment, neither of which was adequate to ensure their safety. He contends this custom violated his Eighth Amendment rights and caused him harm. The Court finds this allegation is sufficient to state a claim against CoreCivic.

For the foregoing reasons, all claims against Defendants Casagrande and Leek are DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Process will be issued for Defendants Boyd and Bills on Franklin's Eighth Amendment claims for failure to protect and his state-law claims. Process also will be issued for CoreCivic on Franklin's claim that Defendants Boyd and Bill were acting pursuant to a well-settled policy or custom that violated his Eighth Amendment rights.

It is ORDERED that the Clerk shall issue process for WCF Defendants FNU Boyd and FNU Bills and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Boyd and Bills pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail

service is not effective. Service shall be made on CoreCivic[4] pursuant to Federal Rule of Civil Procedure 4(h) and Tennessee Rules of Civil Procedure 4.04(4) and (10). All costs of service shall be advanced by the United States.

It is further ORDERED that Plaintiff shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Boyd, Bills and CoreCivic or on any unrepresented Defendant. Plaintiff shall make a certificate of service on every document filed. Plaintiff shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[5]

Plaintiff shall promptly notify the Clerk, in writing, of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[4] CoreCivic's registered agent for service of process is CT Corporation System, 300 Montvue Rd., Knoxville, TN 37919-5546. *See* https://tnbear.tn.gov/Ecommerce/ FilingSearch.aspx.

[5] A copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at https://tnwd.uscourts.gov/pdf/content/LocalRules.pdf.